UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | Crim. Case No. 07-CR-218-01(RMU) |
| | ) | Honorable Judge Ricardo M. Urbina |
| | ) | |
| MATTHEW C. VICTOR, | ) | |
|     Defendant | ) | |

<u>DEFENDANT'S MEMORANDUM IN AID OF SENTENCING</u>

COMES NOW, Matthew C. Victor, through counsel, Jeffrey B. O'Toole, and respectfully submits the following Memorandum in Aid of the Sentencing. That sentencing is scheduled before this Court on February 21, 2008 following his plea of guilty on September 25, 2007 to False Certificates by Consular Officers in violation of 18 U.S.C. Section 1019 and offers the following:

I. <u>INTRODUCTION</u>

Before we begin we must express that this is not the Memorandum in Aid of Sentencing we began to write in December before the initial sentencing date of December 17, 2007. That date was vacated in light of the Government's Memorandum in Aid of Sentencing alleging, for the first time and without notice, that new evidence indicated that Matthew Victor, in October of 2005, a full year after the facts giving rise to the instant case, had embezzled at least $6,000 from the U.S. Embassy in Berlin, and possibly as much as "well over $100,000" and may have used the funds to "engage in inappropriate and unreported sexual relationships with numerous female foreign nationals" (Government's Memorandum in Aid of Sentencing, p.2-3). In light of these new alleged discoveries by Diplomatic Security of the U.S. Department of State, the United States sought restitution and a period of incarceration within the Guidelines of this case, agreed to be

1

from probation to six (6) months incarceration.

On February 12, 2008, the United States, by a different Assistant United States Attorney[1], has filed a Supplemental Memorandum in Aid of Sentencing and informed the Court that it now believes the "amount of funds potentially at issue is $24,000, rather than 'well over $100,000,' and that there is no indication that any alleged embezzlement was committed with the attempt to engage in inappropriate sexual relationships or in furtherance of a scheme to falsely certify visa applications. Therefore, the Government is not requesting restitution for the $24,000, or consideration of that conduct by the Court at sentencing." And, finally, it notifies the Court that the Department of State has not yet presented its findings to any United States Attorney's Office, although it is planning to do so. We believe, though, that this U.S. Attorney's Office will not be proceeding with any prosecution in these new allegations. If it is prosecuted, it will be so elsewhere.

So, the Court has been informed of the new allegations, initial and revised, but has been requested not to take them into consideration and informed that restitution is no longer sought – at least not now – by this Court. But, with no new information about the offense before the Court, the United States now requests incarceration for this offense. Previous Government counsel requested some incarceration within the Guidelines based upon the new allegations. Present counsel now requests the Court to impose some incarceration. This request is made, not in light of the new allegations which it asks the Court not to consider, but because in the "post-911 world" the conduct of Mr. Victor makes him deserving of some incarceration within the Guidelines. This assertion is made even though the AUSA who negotiated the plea, and who knew all the facts to be known about the offense before the Court, planned not to oppose probation and planned not to

---

[1] Aaron Mendelsohn, Esq. who initially handled this case has left the United States Attorney's Office and has been replaced by Jean Sexton, Esq.

oppose unsupervised probation if the Court imposed probation. The United States will argue that Mr. Mendelsohn's promise was made conditioned upon Mr. Victor's complete honesty in his debriefing, and that, because he did not divulge the embezzlement which the U.S. asks the Court not to consider, seeking incarceration is justified. The response to that is that with respect to the crime alleged, to which Matthew Victor has now pled guilty, he was completely forthcoming and for the United States to change its request now, with no evidence that he was not forthcoming, is just not right.

Now, in light of the United States' assertion that these new allegations will be the subject of a new prosecution, somewhere, if not here, we must take the position that Mr. Victor will not address the Court regarding them. Accordingly, we ask the Court, for the reasons that existed before the Government's initial Memorandum, to place Mr. Victor on a period of probation, without incarceration. Further, we respectfully request that that probation be ordered by the Court with conditions that will allow him to relocate to Berlin, Germany, now, where his family is and where he has been offered employment. Should the Court order probation which would allow him to relocate, he will be in a position to be with his high school aged sons and continue to attempt to re-make his marriage, damaged by his conduct in this case. The Government continues not to oppose unsupervised release, if and when such release is ordered, to allow him to rejoin and support his sons in Germany and attempt to re-build his marriage.

At the outset Mr. Victor respectfully urges the Court to know that he understands and accepts fully the severity of his criminal conduct and that nothing contained in this Memorandum is intended by him to reduce how seriously the Court must view this matter. If acceptance of responsibility is the first step toward rehabilitation, Mr. Victor has taken that first significant step. He offers this Memorandum to the Court to provide a clear and hopefully accurate picture of the

offense, and of Mr. Victor. Finally, while Mr. Victor realizes that this court is under no obligation to follow the recommended sentencing guidelines in this case, it is his hope that Your Honor will sentence him to a period of probation without incarceration and direct the imposition of conditions of probation which would permit him to relocate to Germany now, in order to be close to, support and interact with his school age children.  As to the conditions of probation or supervised release following incarceration, if that were imposed, which would allow him to relocate to Germany immediately, the United States has expressed that it would not oppose such conditions.

## II. FACTUAL BACKGROUND

At the time of the plea in this case Your Honor released Mr. Victor making it clear that the Court does not yet know very much about him.  Your Honor expressed that with the Presentence Investigation Report and a Memorandum in Aid of Sentencing, the Court will know much more about Mr. Victor and the Court will be able, in essence, to sentence the man and not just the crime. With the very well prepared Report submitted by Ms. Linsey Epson, the Court has now been exposed to many of the background facts about Mr. Victor. Those facts tell us that he is 44 years old and has been married to his wife, Erika, for twenty years, and has two sons, aged 14 and 16. The report goes on to mention his education, his family and his upbringing. It describes his employment at the time of the crime.

What is not before the Court, which is difficult to capture in Report such as this as it is often difficult to articulate: What is the personality of Mr. Victor? What do those in the community think of him and why? And, to what degree will he be missed in the community if he is absent for a prolonged period of time? To what degree has he accepted responsibility and squared what he did with who it is he thinks he is? -- In short, who this man is?  We have requested family members and friends to write to Your Honor to express their thoughts about him because they know

Matthew the best. Because he and his family have traveled extensively we have requested friends and acquaintances from abroad to write to the Court, as well. It would be an understatement to say that those who know Matthew the best know him to be gentle, caring, giving. In the letters attached, at EXIBIT A, is the description of a man we would all choose to be our neighbor, our colleague and our friend. He likes to work with words and with athletics for the benefit of youngsters. He has a patient way with the young and clearly has had a positive influence on school aged children. He has made a lifetime of contributing his time to the community, expecting nothing in return and adding value the community around him. But, he is before the Court because he is also a convicted felon, having abused the trust of his country and family. That he has done this both confuses and saddens those who love him.

As the Court reads the letters addressed to Your Honor, you will see a recurring theme from the members of the community. For good, sound reasons they have come to depend upon him as much as we depend upon anyone in our lives, important to us, whom we would miss greatly if they were to leave us.

### III. LEGAL ARGUMENT

Classically, we view sentencing to serve four purposes in the criminal system: punishment, rehabilitation, protection of the community and deterrence. It is, of course, the Court's role to decide how to apply these concepts to each case. We respectfully urge the Court to find that, with respect to punishment, it comes in many different and real forms. Without complaining or trying to sound the victim, as nothing could be further from the fact, Matthew Victor has been and will continue to be punished, no matter how this court resolves this case today. He continues to try to support and love his family, and continues to make progress in reconciling with his wife, for which he is utterly grateful, relieved and somewhat surprised. He has lost much else. He will never be trusted again by the government, never again be placed in a position of responsibility, or, in fact,

any position with the government. He will be labeled forever a felon, underemployed for the rest of his career in relation to his education and what was his potential. Like anyone with family and responsibilities in the community, he does not want to go to prison, not just for his own interest, but for the wellbeing of his family. But he does understand that prison time comes naturally to mind when one commits crimes of violation of trust, even though, as here, the Guidelines suggest a range that starts at probation. Our only request is to seek a finding that punishment is relative and that Matthew Victor will continue to be punished and will punish himself, forever.[2] With respect to deterrence, we suggest that while the community to be deterred by the sentence in this case is identifiable and finite, that community is educated, very intelligent and career oriented. That community has heard of this case and will hear of the sentence arrived at by this Court today. We ask the Court to apply the thoughts stated above regarding punishment and find that jail time is not the only common denominator. That community will know that Matthew Victor's career is over, no matter how today's case turns out. That community will know that Matthew Victor has lost so much that he, and they in their lives, hold so dear. Again, without the slightest effort to be viewed the victim here, we urge the Court to find that the non-prison punishments in this matter will deter the diplomatic community from this type of activity.

With respect to protection of the community, we urge the Court to find that this conduct by Matthew Victor was an aberration and that the request for the imposition of some incarceration is inappropriate. As referenced above the United States has asked for a period of incarceration, in part, because, "as a Consular Officer in the Embassy of the Unites States in Berlin…in a post-911

---

[2] Of course the record is clear that Matthew Victor has lost and will lose financially. He lost his job and career with his plea of guilty. Not only did he lose his income and to a large extent his employability, he lost the major part of his hoped for and expected retirement income. His approximate financial loss, the size of which provided to him by the U.S. State Department financial office, without factoring in raises, and assuming he worked until the minimum retirement age of 56 and lived to 76 is approximately $682,000 and with anticipated raises, his lost retirement income is over One Million Dollars. These figures are based upon the difference of what he will earn by resigning now compared to what he would have earned by retiring at age 56.

world...only those individuals who were lawfully eligible to enter were given visas..." (Government's Supplemental Memorandum in Aid of Sentencing, page2-3) and Mr. Victor violated his position of trust by helping a woman with whom he had had an intimate relationship for more than 3 years get a visitor's visa. We respectfully suggest that this volatile reference to "911" is a bit heavy handed in light of the fact that the initial Assistant United States Attorney, Aaron Mendelsohn, had the same information as the present AUSA and indicated in the plea negotiations that he would not oppose probation and if probation were ordered he would not oppose unsupervised probation in order to allow Matthew Victor to relocate to Germany where he has been offered employment and where he could be with his children and hope to re-build his family.

Finally, with respect to rehabilitation, in order to gauge his prospect for successful rehabilitation, one asks "why did he do it, and will he do it again?" We offer that his complete and sincere acceptance of responsibility for his criminal conduct is the first real step in the right direction. That step was taken when he first spoke to DS and did so without counsel, despite being aware he was entitled to one. The "why", of course, is the most difficult question. As the record shows he knew the woman well nearly 4 years. For reasons of love and affection he made the wrong and fortunately for the United States, non-dangerous decision as it turned out, to help her visit the United States.[3] The best he can tell this Court, and he will address the Court at sentencing, is that he will work hard at rehabilitation and at the task of making those who know him proud of him once again.

## CONCLUSION

We respectfully ask the Court to reject the request for a period of incarceration in this case

---

[3] Ms. Ewa Zapedowska still has her visitor visa and is free to travel to the United States as she pleases and Diplomatic Security has taken no step to revoke the visa, indicating that is does not view her as any sort of a threat.

and to impose a period of probation to be completed while he is in residence in Berlin, Germany. We ask the court to impose conditions on that probation to permit the Court and the Probation Office to keep track of his employment and his support of his family. By ordering him to be employed in Berlin, where his wife and children live, he will be able to financially support his family and meaningfully interact with his high school sons who are at a critical age with respect to needing the love and interaction with their father. Additionally, he will be able to continue to attempt to bring his marriage back to life, to the benefit the entire family. With respect to this contemplated release condition, the Government does not object. By ordering him to be in close contact with his probation officer, the Court can be assured that he is completing his probation as directed by the Court.

Respectfully submitted,

/s/ Jeffrey B. O'Toole

Jeffrey B. O'Toole
1350 Connecticut Avenue, NW
Suite 200
Washington, D.C.   20036
(202) 775-1550
Counsel for Matthew Victor

Certificate of Service

This is to certify that a copy of the foregoing Memorandum in Aid of Sentencing was mailed, postage prepaid, and email, this 15th day of February, 2008 to Jean Sexton, Esq. AUSA, 555 4th Street, NW, Washington, DC, 20001, counsel for the United States.

/s/ Jeffrey B. O'Toole

_____
Jeffrey B. O'Toole

# EXHIBIT A

September 10, 2007

To Whom It May Concern:

Although it may sound strange, coming from his estranged wife, I would like to write in support of Matthew Victor. I am aware that he has agreed to plead guilty to visa fraud, a charge he admitted to when confronted. The damage this has already done to his career and personal life is huge. Although we are separated, I took a job in Germany, rather than a more lucrative one in Asia, with the hope that he could potentially relocate to Germany so that he could be have more contact with our teenage sons. As 14 and 16 year old boys, their relationship with their father is especially important to their development as young men.

As he is going to lose his job, he really does not pose a threat to anyone's security, so I would hope he does not need to remain in the US. He speaks German fluently and while here previously he was active in the community as a volunteer coach of soccer and baseball. He would be able to use his language skills here and maintain stronger ties with his sons.

He has always been active in the community and has served as a volunteer baseball and soccer coach for over 20 years, even before we had children. He is active and involved in his children's lives. Moreover, I believe that he regrets his actions deeply. Since his return to the U.S., he has been meeting with a counselor. I hope that all this can be taken into consideration.

Sincerely,

*Erika Victor*

Erika Victor

Alice Fisher
621 Tremont St. # 1
Boston, MA 02118

To whom it may concern,

I am Matthew Victors' mother-in-law, and grandmother of his two sons Jason and Curtis. My daughter, Erika, and Matt are no longer living together. It is a testimony to both their commitment to be sure that their children are well parented. Erika has been clear that she is perfectly comfortable that I am writing this letter in support of Matt.

We all wish that Matt can receive unsupervised probation so that he can relocate to Germany and be directly involved in his children's' lives. All members of the family are hoping for this outcome, as the children will benefit by having two involved parents.

I have never doubted Matt's parental role: Jason and Curtis are a testimony to their legacy of two actively involved and loving parents. Ideally Matt will move to Germany where he can work, continue to support his children, and be an active father.

Many thanks for your consideration,
Alice Fisher

Gary T. Berberian, Esq.
1500 Mass. Ave NW
#533
Washington, DC 20005
202.887.5354
garyberberian@hotmail.com

The Honorable Ricardo M. Urbina
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Room 6006 Annex
Washington, DC 20001

RE: 1:2007-cr-00218-RMU
USA v. VICTOR

9/20/2007

Dear Judge Urbina,

I am writing to you on behalf of Matthew C. Victor. Mr. Victor is the defendant in a case who appears before you on 9/25; on that date, Mr. Victor will enter a guilty plea for violating 18 U.S.C. s 1019. I am writing to ask for mercy for Mr. Victor when you impose sentence.

Mr. Victor and I first met when we were both employed in the CIA's Office of Leadership Analysis in the late 1980s. Mr. Victor did not stay at the Agency long; he had applied for and was appointed a Foreign Service Officer and thereafter left to begin a career in the U.S. Dept. of State. Shortly after Mr. Victor left, I too left the Agency to attend law school and while our paths diverged, we have somehow managed to remain friends these years all the while during his many postings overseas at various embassies. Mr. Victor is married to his wife Erika, and has two sons, Jason and Curtis-of whom I was asked to be Godfather to. I have always been very proud of Mr. Victor during his tenure at the Dept. of State and have never known him to ever be disloyal or unpatriotic in any sense. Never in a million years would I have ever thought he would ever do anything to bring shame or discredit to himself, his family or his country and yet, inexplicably, that is exactly what he did when he helped a Polish national obtain a visa to visit the United States by knowingly certifying falsely to that application. That one act has set into motion a calamitous series of consequences.

When Mr. Victor telephoned me back in April of this year to tell me what was happening to him I was in a total state of shock, I simply could not believe what I was hearing. What he was telling me was so out of character I had a difficult time really believing what had happened. We had several frank conversations about what he had done and I told him how bitterly disappointed I was in him and for the terrible repercussions his actions would mean for all of his family. When I finally did see him after his return from India, he looked physically ill-he was not sleeping, could not eat, and was constantly worrying about his family's future. To put it simply, he was wrecked and he knew he had just lost everything that ever meant something to him.

Mr. Victor has lost his beloved family-gone, now living in Berlin, Germany; his position in the Foreign Service and the consequences of losing his federal pension and other retirement benefits; he has lost the respect of his colleagues and associates and most devastating of all he seems to have lost his hope for a future. He is wrecked emotionally and financially and he prays you will show mercy when you punish him and allow him to relocate to Berlin, Germany so he can start the long, arduous process of trying to heal his broken family and repay his debt to society.

RE: 1:2007-cr-00218-RMU
USA v. VICTOR                                    1

Mr. Victor is seeing a mental-health counselor so that he can learn and grow from this terrible experience. His goal is to reunite with his family and to that end, he is also regularly in touch with his priest in Berlin, with whom he would expect to set up a regular series of appointments to help him deal with his anguish and guilt and help him cope with his remorse. He recently volunteered to coach a Baltimore inner-city elementary school soccer team for girls that no other adult was interested in taking on, as a way of starting to repay his debt to society. He is also getting involved in charitable work through his church.

He knows what he did was wrong and he has told me he is sorry for his actions and I believe him. Mr. Victor accepts responsibility for what he did and is ready to accept whatever punishment the Court seems fit to impose. I respectfully ask the Court to temper that sentence with mercy and compassion and consider a ruined family thousands of miles away. His sons need him and before his sons are forever lost to him, I ask the Court to allow him to set to work all that he can do to repair the damage he has caused. Please allow him to show his sons he loves them by allowing him to relocate to Berlin so that he can hopefully find a way to provide for them in the best way he can.

Sincerely,

*Gary T. Berberian*

Gary T. Berberian

## To whom it may concern

I first got to know Matt Victor in the year of 2003 when he offered his help in setting up an international soccer club for children in Berlin. In the process, Matt became part of the first elected board of the EFCB and served as a deputy chairman until he left Germany for India in 2006. He also represented the club within the American German Business Club which fosters American – German relations in Europe. He was instrumental in setting up International Sports Summer Camps in Berlin aimed at children of the diplomatic community as well as local children.

In his administrative work, Matt was organised and forward-thinking. He dedicated countless hours on top of his heavy work schedule to meet all requirements that came with his post as deputy. His main passion and strength, however, was working with the children on the soccer field. Players and coaches alike admired his kind and patient way of teaching children the basic skills, the ethics and tactics of the game. As a coach, I remember Matt as a very reliable, honest and hard working man. Voluntarily he spent countless hours during the week and the weekend coaching children and helping to establish the English Football Club Berlin, a club that now serves over 1500 children of Berlin's international community throughout the year.

I am aware that Matt has entered a guilty plea in connection with his official capacity as a consular officer. I would like to point out that this incident seems an aberration from his normal behaviour. I know he deeply regrets his actions and wants to make up for the damage that he has caused.


Michael Stolz
Chairman
English Football Club Berlin e.V.



Berlin, 26.08.2007


**The English Football Club Berlin, Sven-Hedin-Str.14, 14163 Berlin, Germany**
**Tel: +49 30 80589928   Email: info@english-football-club.com**



# United States Youth Soccer - Europe
# Olympic Development Program

US Youth Soccer Europe ODP
Harry-Steinbock-Straße 3, D-69190 Walldorf

Address:
ODP-Europe
c/o Sven Stadtrecher
Harry-Steinbock-Strasse 3
69190 Walldorf
Germany

Web: www.odp-europe.org
E-Mail: odp_europe@yahoo.com
Phone: +49-6221-678-2564

Heidelberg, 31. August 2007

To whom it may concern,

Matthew Victor has been a volunteer soccer coach for the US Youth Soccer Europe Olympic Development Program (ODP) from 2004 until 2006. Matt has been the Head Coach for our Berlin District and therefore in charge of US Youth Soccer's Presence in the German captial.

He has volunteered more than 15 hours a week for the program, coaching young American soccer players in Berlin in order to make them better soccer players.

Matt has been very pro-active and never failed to help when needed. ODP Europe has lost its best volunteer and he is greatly missed.

Yours in Soccer,

Sven Stadtrecher
Director of Coaching

# English-speaking Roman-Catholic Mission

## Archdiocese of Berlin
Father H. Gillessen
Königin-Luise-Str. 33
D-14195 Berlin
Tel: +(030) 813 20 26, Fax: +(030) 813 20 47
E-mail alsda46@aol.com
www.English-Mission-Berlin.de



To whom it may concern

I have known the Victor family for some years when they were in Berlin and came to our Church regularly on Sundays. They helped as lectors and organized the "greeters". Mrs Victor was a member of the Mission Council.

After their sudden return from India I have been informed about their new situation after the separation of wife and husband.

I am convinced it would be best if Mr Matthew Victor could live in Germany to be in closer proximity to his two sons who need their father.

Berlin, 19 August 2007

*H. Gillessen*

Fr Herbert Gillessen
Head of the Mission

## English-speaking Roman-Catholic Mission

**Archdiocese of Berlin**
Father H. Gillessen
Königin-Luise-Str. 33
D-14195 Berlin
Tel: +(030) 813 20 26, Fax: +(030) 813 20 47
E-mail alsda46@aol.com
www.English-Mission-Berlin.de



Dear Mr Victor,                              19 August 2007

Last Wednesday your wife came to Holy Mass on the solemnity of the Assumption of the Blessed Virgin Mary. Afterwards I invited her to the rectory and had a long conversation with her.

    As You imagine she feels very much hurt and angry. She admits that she still loves you, but more as a friend than as her husband. And she also admits that the boys love you and that you love the boys.

    I suggested to her that the three of us should meet one day. Although I had a very painful experience with this sort of "trialogue" in the past (when the partners contradicted each other and I was helpless in their midst) I offer you this mediation. A sacramental marriage is such a precious thing and the reconciliation of spouses so important for the future of the boys (and the two of you!) that we should try our best to find a fair solution.

    Let us pray for the Spirit of Counsel.

God bless you!

*F. H. Gillen*

Neil Conlan
Siemens AG
Siemens Professional Education
Technical Academy, Berlin
Nonnendammallee 104
13629 Berlin, Germany

re: Matt Victor

8/31/2007

To Whom It May Concern:

My name is Neil Conlan and I have been in the educational field for over thirty years and have taught and coached young people throughout my career.
For a period of four years (2002-2006) both Matt and I worked together to establish the John F. Kennedy School Soccer Club. During this time we also worked on establishing a Berlin Chapter of the ODP Europe Soccer Program and took teams from Berlin to competitions throughout Germany. We also had a chance to work even more closely in 2005, which was the year we co-coached a team in the Berlin Baseball League.
Over the years I have known Matt I have developed a genuine respect for the way he deals with kids and adults. He always treats the players with respect and candor and his knowledge and understanding of both the kids and the sports he coaches is a huge asset to his success as a coach.
It has been a pleasure to work with Matt in the past and I can only hope the opportunity presents itself again at some point in the future.

Yours sincerely,

Neil Conlan

Dr. Jackie Pocklington
Professor of Business and Technical English
Technische Fachhoschscule Berlin
University of Applied Sciences
Luxemburgstr. 10
13353 Berlin
Germany

August 20th, 2007

To Whom It May Concern

I have known M A T T H E W   V I C T O R since the 2002 baseball season when both of us were volunteer coaches of opposing Major League teams (11-12 year olds). I was impressed with his commitment to training his team and his patience in coaching even the weakest of players. He was always positive in his criticism and built up players' confidence to enhance their performance and their belief in themselves.

After that initial season Matthew Victor assumed additional responsibility by joining two key board of director positions, namely as Coach Coordinator and then as Vice Commissioner. Both of these positions are very demanding. As Coach Coordinator one has to oversee the coaching operations of up to twelve different teams of three coaches each. He disseminates information between the board of directors and coaches in both directions, mediates conflicts and if necessary carries out disciplinary measures. During the season this work is very intensive and demanding. As the Vice Commissioner one assists the Commissioner in running the entire little league operation by sharing/assuming numerous responsibilities of planning, execution and coordination that would otherwise be impossible for one individual. The two basically keep the entire operation of the league afloat. When Matthew Victor left the league in 2006 due to an employment-related relocation, we deeply regretted this.

Personally Matthew Victor has been well liked by all and appreciated for his services to the little league community. We wish him well in whatever he pursues and would be very pleased to see him return some day to our league.

*Jackie Pocklington*
Jackie Pocklington

Umpire Coordinator
and
Member of the Board of Directors
of the
Berlin Baseball Little League

September 24, 2007

To Whom It May Concern:

I write in support of Matthew Victor, with whom I worked at the U.S. Embassy to Poland from 1998-2000.

Matt was my first supervisor in the U.S. Foreign Service, and was a role model and a professional who had a lasting effect on my career. He is a diligent diplomat, an intelligent manager, but most importantly, a caring individual, who puts people first in his personal and professional life.

I have been promoted three times since I began working with Matt, and was most recently the Political Officer at the U.S. Embassy to the Vatican. I credit Matt's influence as a mentor early in my career as a great help to my development.

I am aware that Matt is pleading guilty to one count of false certification by a consular officer, but I an unaware of the details of his case. I can only tell you that my experience with him has shown him to be an upstanding person and citizen who has a lot to contribute to our society.

If I can speak to you further about Matt, please do not hesitate to call me at (w) 202-226-9624 or (cell) 571-268-0830.

Respectfully,

*[signature: Peter G. Martin]*

Peter G. Martin

U.S. State Department Pearson Fellow
U.S. House of Representatives Foreign Affairs Committee
Subcommittee on Africa and Global Health